MARSHALL v. TURNBULL and others.[1]

(*Circuit Court, E. D. New York.* August 10, 1887.)

1. INJUNCTION—AFFIDAVITS—CONFLICT OF TESTIMONY
    Complainant, a holder of bonds which a certain tract of land in the delta of the Orinoco was mortgaged to secure, applied for a preliminary injunction restraining defendants from committing any injury to said land. Nothing appeared in the moving papers to show that defendants were in any way interfering with the land in question except by claiming title to it, and the affidavits disclosed a conflict of testimony which could be passed upon safely only on the trial of the action. *Held,* that the determination of the rights of the parties should be postponed until the trial, and the motion for a preliminary injunction be denied.

2. SAME—PREVENTION OF WASTE—FOREIGN LAND—POWER TO ENJOIN.
    A defendant, properly served, may be enjoined from committing waste upon, or otherwise impairing the value of, property in which the complainant is interested, even though the property is situated abroad, provided a case for the interposition of a court of equity is made out.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Equity.
*W. M. Safford*, for complainant.
*Silas M. Stilwell*, for defendant.

LACOMBE, J. This is an application for a preliminary injunction to restrain defendants George Turnbull and the Pedernales Company, their agents, associates, servants, etc., from committing any injury upon a certain tract of land in the delta of the Orinoco, or doing any other act to the prejudice of the complainant, who is the holder of certain bonds which said tract of land is mortgaged to secure.

The defendant Turnbull raises a preliminary objection, viz.: That the court has no jurisdiction of the action, the bill being for the foreclosure of a mortgage on lands situated in a foreign country. The question of jurisdiction need be considered at this stage of the proceedings so far only as it is germane to the matter now before the court. The particular relief prayed for in the bill, and which the court is now asked to extend to the complainant, is concededly within the power of this court. A defendant, properly served, may be enjoined from committing waste upon, or otherwise impairing the value of, property in which the complainant is interested, even though the property is located abroad, provided a case for the interposition of a court of equity is made out.

The affidavits admitted upon the motion disclose a complicated condition of affairs, with an unusual display of personal bitterness. Upon questions of fact so simple as apparently to preclude the possibility of an honest mistake in their statement, the respective affiants flatly contradict each other, and it is hard to escape the conviction that there has been an abundance of false swearing.

It appears that in 1883 the government of Venezuela granted to one Fitzgerald a concession, for 99 years, of several hundred thousand acres of land (including the island of Pedernales) situated in the delta of the Orinoco, upon certain terms and conditions. This concession Fitzgerald transferred to the Manoa Company. The latter company leased to Henry F. Stone that part of the concession known as the island of Pedernales. Stone and his associates created the International Asphalt Company, and subsequently the Pedernales Asphalt Company, to operate under such lease; the island being supposed to be valuable by reason of an asphalt lake therein situated. Subsequently, and early in 1886, the defendant George Turnbull received from Guzman Blanco, at that time minister and envoy from Venezuela to London and Paris, a concession, or rather a contract to give a concession, including all the territory originally conceded to Fitzgerald. On September 10, 1886, this contract was approved by the president and federal council of Venezuela; the same authorities having, on September 9, 1886, declared the Fitzgerald contract void and forfeited. The complainant urges that the new contract is either wholly void as to the Manoa Company, by reason of the circumstances under which it was made, or that it inures to the benefit of the Manoa Company, (complainant's mortgagor,) by reason of the trust relation which it is claimed George Turnbull bore to that company.

The claim that the new contract is wholly void is based on the assertion that was obtained from Blanco by bribery and corruption. The only fact sworn to in support of this assertion is that' on several occasions Turnbull has stated either that Blanco was his partner in the concession, or that he was to give Blanco "forty-eight per cent. of the fruit of the contract." Whether or not the laws of Venezuela allow her foreign ministers and other government officials to become interested with foreigners in schemes for developing the resources of the country, nowhere appears, although it seems that Blanco was also interested in the Manoa Company, holding one-fourth of its capital stock, and that Gen. Crespo, while president of the republic, was also a stockholder in said company. The defendant Turnbull flatly denies that Blanco is interested with him, or that he ever so stated; and as to one interview referred to in complainant's affidavits he is corroborated by the evidence of another witness. This is not a question to be determined on *ex parte* affidavits. The vehement and bitter charges and counter-charges with which the affidavits are filled, indicate a state of affairs which can only be safely passed upon at the trial, where the several witnesses may be cross-examined.

The claim that the new concession inures to the benefit of the Manoa Company by reason of the trust relation which it is claimed George Turnbull bore to that company is based upon two assertions. In the first place, it is contended that Turnbull was the real party in interest in the Stone contract, by which the island of Pedernales was leased from the Manoa Company. In the second place, it appears that he was elected treasurer of the International Asphalt Company, which was formed to work that lease, and in which the Manoa Company was a large stockholder. Turnbull denies that he is the real party in interest in the Stone contract, and says that, though elected treasurer of the company, he never acted as such. Without discussing the conflict of testimony thus presented, it is sufficient to say that there is nothing in the affidavits to show that Turnbull or the Pedernales Company are, either of them, in any way interfering with the island of Pedernales, except by claiming title thereto. The specific acts charged against these defendants are the mining of ore from some other part of the original concession. Of course, the duty, if any which Turnbull owed, as holder of a trust relation to the Manoa Company, was limited to the subject-matter of the Stone contract, and of the International Asphalt Company. The subject-matter is the island of Pedernales, and the asphalt lake therein. There is nothing shown in the moving papers which calls for the summary granting of a preliminary injunction to restrain defendants' action as to the island and lake, and therefore, in view of the conflict of testimony presented by the affidavits, the determination of the parties' rights should be postponed till the trial. Motion denied.